UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTY BROWN, ALSO KNOWN AS
"LEAH," individually and on behalf of herself
and all others similarly situated,

         Plaintiffs,
v.

**DECISION AND ORDER**
12-CV-529S

MUSTANG SALLY'S SPIRITS AND GRILL,
INC., d/b/a/ Tiffany's Cabaret & Steakhouse
and Tiffany's Cabaret, DAVID SCRIVANI,
DOMINIC L. SCRIVANI, and JOHN DOEs 1-
10,

         Defendants.

## I. INTRODUCTION

Plaintiff Christy Brown on behalf of herself and all others similarly situated, commenced this collective action pursuant to the Federal Labor Standards Act ("FLSA") and putative class action pursuant to New York State Labor Law seeking damages due to Defendants' alleged failure to comply with these laws. Plaintiffs now move this Court for a temporary restraining order and preliminary injunction restraining Defendants from "making any further threats or other communications that risk chilling putative class members' participation in this action."[1] The Court has considered the parties' submissions

---

[1] In support of their motion, Plaintiffs submitted a supporting Memorandum of Law with Ex. 1; Declaration of Dan Getman, Esq.; Declaration of Plaintiff Alicia Guastaferro; and Declaration of Michael J.D. Sweeney, Esq. (Docket No. 18). Following substitution of defense counsel (Docket Nos. 22-23) and this Court's granting of an extension of time to respond (Docket No. 29), Defendants responded with the Declaration of Diane M. Perri Roberts, Esq.; Declaration of Michael Schiavone, Esq.; and the Declaration of Defendant David Scrivani (Docket No. 28). Defendants further submitted an opposing Memorandum of Law; Declaration of Ginger D. Schroder, Esq., with Exs. A-M; the supplemental Declaration of David

1

and finds oral argument unnecessary. For the reasons that follow, Plaintiffs' motion is granted in part and otherwise denied.

## II. BACKGROUND

Plaintiff Christy Brown commenced this action in June 2012 on behalf of herself and other similarly situated dancers who worked at Defendants' night clubs in the three years prior to the filing of the case. (Compl. ¶¶ 18, 32.) Defendants' alleged violations are based on their purported misclassification of employee dancers as non-employees in order to evade the minimum wage and similar requirements of FLSA and New York law. (Id. ¶ 1.) The complaint alleges that Defendants failed to pay dancers in compliance with minimum wage and overtime requirements; failed to reimburse dancers for the uniforms that they were required by Defendants to wear; and failed to keep accurate employment records in violation of both FLSA and New York Labor Law. (Id. ¶¶ 57-102, 117-130.) It is also alleged that Defendants further violated New York Labor Law by failing to pay dancers 'spread-of-hours' pay and by improperly retaining part of the gratuities received by dancers. (Id. 103-106.)

In compliance with FLSA's requirement that an employee wishing to join in a collective action give his or her consent in writing, 29 U.S.C. § 216(b), Alicia Guastaferro filed her consent to become a party plaintiff on July 20, 2012. (Docket No. 12.) According to Guastaferro, she received a series of communications around that time from her estranged husband, purportedly at the behest of Defendant David Scrivani, which Plaintiffs interpret as an attempt to dissuade Guastaferro's participation in the lawsuit. (Decl. of Alicia

---

Scrivani, and the Declaration of Tiffany Durilla (Docket No. 30). Plaintiffs filed a reply Memorandum of Law (Docket No. 31).

Guastaferro ¶¶ 5, 8-17, Docket No. 18-4.) Plaintiffs' counsel asserts that during his discussion with defense counsel, he was informed that "if Plaintiffs recovered in this matter, Defendant would be required to report any tip income Plaintiffs had received to the tax authorities and that Plaintiffs could incur substantial tax liability." (Decl. of Michael J.D. Sweeney, Esq., ¶ 2, Docket No. 18-5.)

As a result of these communications, Plaintiffs now "seek an order restraining Defendants and their agents from making threats or any other communications designed to chill participation in this lawsuit." (Pls' Mem of Law, Docket No. 18-1 at 1.) Specifically, Plaintiffs request that this Court: (1) order expedited discovery regarding defendants' communication with putative or current class members; (2) order defense counsel to "fully disclose whether it had any role in [such] communications;" (3) "[e]njoin any effort by Defendants or their counsel to chill participation in this case, including prohibiting any further communication concerning joining the case, except as approved by the Court;" (4) and "[e]njoin retaliation by Defendants against any individual participating in this case." (Pls Mem of Law at 13-14.) Plaintiffs also make requests regarding the equitable tolling of the FLSA statute of limitations, the circumstances under which any putative class member excludes him- or herself from the class action, and the ability for individuals to join the action post-judgment. These last arguments are unsupported by legal argument, and will not be considered at this time.

### III. DISCUSSION

Courts have the authority in both Rule 23 class actions and FLSA collective actions (29 U.S.C. § 216(b)) to enter appropriate orders governing the conduct of counsel and parties. Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170-71, 110 S. Ct. 482, 107

L. Ed. 2d 480 (1989); Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981); Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667 (E.D.Tex. 2003). This supervisory authority exists even before a class is certified. In re Initial Public Offering Sec. Litig., 499 F. Supp. 2d 415, 418 n. 13 (S.D.N.Y. 2007) (citing In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005)). The "primary purpose in supervising communications is . . . to ensure that potential members receive accurate and impartial information regarding the status, purposes and effects of the class action." Hinds County, Miss. v. Wachovia Bank N.A., 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) (citing Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1203 (11th Cir. 1985)).

Notably, "[u]pon class certification, the rules governing communications with class members are heightened because they apply as though each class member is a client of the class counsel." Gortat v. Capala Bros., Inc., No. 07-CV-3629, 2010 WL 1879922, *2 (E.D.N.Y. May 10, 2010)(quotation marks and citation omitted), *objections overruled* 2010 WL 3417847 (Aug. 27, 2010); see Tedesco v. Mishkin, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986). Contrary to Plaintiff's assertion, however, there is nothing inherently improper about a party's communication with potential class members prior to certification, as is the case here.[2]

---

[2]As the Second Circuit has noted:

> [W]hile courts speak of "certifying" a FLSA collective action, [as opposed to a class action pursuant to Rule 23,] it is important to stress that the "certification" we refer to here is only the district court's exercise of the discretionary power, upheld in Hoffmann-La Roche, to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in Hoffmann-La Roche has not been sent, so long as such plaintiffs are "similarly situated" to the named individual plaintiff who brought the action.

Myers v. Hertz Corp., 624 F.3d 537, 555 n. 10 (2d Cir. 2010), *cert denied* 132S. Ct. 368 (2011). FLSA and

> Both parties need to be able to communicate with putative class members—if only to engage in discovery regarding issues relevant to class certification—from the earliest stages of class litigation. Furthermore, named plaintiffs and their counsel do not always act in the best interests of absent class members, and not all defendants and defense counsel engage in abusive tactics. District courts thus must not interfere with *any* party's ability to communicate freely with putative class members, unless there is a specific reason to believe that such interference is necessary.

Austen v. Catterton Partners, 831 F.Supp.2d 559, 567 (D. Conn. 2011) (emphasis in original). Indeed, even "*ex parte* communications between defense counsel and putative class members—even *ex parte* settlement negotiations—are not abusive communications that warrant limitations absent indications in the record of the need for limitations." Austen, 831 F.Supp.2d at 565; see Christensen v. Kiewit-Murdock Inv. Corp., 815 F.2d 206, 213 (2d Cir. 1987), *cert denied* 484 U.S. 908 (1987) (no impropriety in defendants' negotiation of settlements with potential members of a class); Urtubia v. B.A. Victory Corp., – F.Supp.2d –, 2012 WL 753760, *7 (S.D.N.Y. 2012)(noting "[d]efendants' right to communicate directly with current and former employees who are potential class members regarding this litigation and its subject matter").

Intervention is warranted, however, where such communications are found to be misleading or coercive, as such communication poses "a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." In re School Asbestol Litig., 842 F.2d 671, 680 (3d Cir. 1988). Where defendants are also the employers of potential class action plaintiffs, the "workplace

---

New York Labor Law claims, such as the ones asserted here, usually revolve around the same set of facts, therefore plaintiffs frequently utilize "the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state Labor Law] claims as a class action under the district court's supplemental jurisdiction." Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234, 243-44 (2d Cir. 2011). In contrast with a FLSA collective action, potential class members must opt out of the state law class action. Id. at 249.

relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in [the] litigation." Urtubia, 2012 WL 753760 at *7.  Thus, "when a defendant is in an ongoing, current business relationship with members of a putative class, for example an employment relationship, it may be prudent to preempt the defendant's ability to use the relationship and pressure class members to make factual concessions or settle claims." Austen, 831 F.Supp.2d at 568.

This Court's discretion to supervise communications in class and collective actions is not, however, unfettered:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing–identifying the potential abuses being addressed–should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

Gulf Oil Co., 452 U.S. at 101-02 (footnotes omitted); see Rossini v. Ogilvy & Maher, Inc., 798 F.2d 590, 601-02 (2d Cir. 1986).

Here, Plaintiffs' motion is based primarily on text messages sent to Plaintiff Guastaferro by her estranged husband, non-party Scott Kleveno.  (See Guastaferro Decl. ¶¶ 5, 12-15; Pl's Mem of Law at 2-5, Docket No. 18-1.)  These messages were sent after Kleveno informed Guastaferro that Defendant David Scrivani "offered him money to make sure the dancers do not join the lawsuit." (Guastaferro Decl. ¶ 9.)  According to Guastaferro, Kleveno texted her that "Tiffany[']s is filing a countersuit for a lot," and were

6

"going to turn over vip and sales records," resulting in Guastaferro being "charged with tax fraud or at the least have to pay a huge[] fine." (Id. ¶ 12.) Scrivani admits communicating with Kleveno regarding the lawsuit, including the fact that he "would be countersuing for the service fees," but states that he "did not expect Kleveno to share [that] discussion with Guastaferro, nor did [he] make that statement to somehow retaliate against [her] for filing suit." (Decl. of David Scrivani ¶¶ 18-24, Ex. J, Docket No. 28-2.) Plaintiffs also highlight Kleveno's apparent assertion that Scrivani has spoken with Guastaferro's current employer, Mark Whipple. (Scrivani Decl. ¶ 26; Guastaferro Decl. ¶¶ 13-14.) Scrivani does not dispute that he has had conversations with Whipple, but denies that they discussed Guasaferro or her status as a plaintiff in the present action. (Scrivani Decl. ¶¶ 26-27.)

Even if any credibility dispute was resolved in Plaintiffs' favor, the Court finds that this record falls short of constituting, as Plaintiffs assert, "substantial evidence that Defendants are making these threats to other potential class members," or that Defendants "have systematically undermined the authority of this Court by using threats of losing current employment, retaliatory counterclaims, and retaliatory criminal investigations." (Pls' Mem of Law at 6-7.) The evidence offered by Plaintiffs consists of a few rambling text messages to only Guastaferro from her estranged husband. Guastaferro does not allege that Kleveno admitted accepting Scrivani's offer of money to prevent dancers from joining the lawsuit or that he had, in fact, contacted any such potential class member. (See Guastaferro Decl. ¶ 9.) Any argument that Kleveno's text messages to Guastaferro herself were subversive attempts to intimidate her is undermined by Kleveno's full disclosure of his motivation in making those statements: the alleged payment from Scrivani.

Further, the fact that Scrivani had conversations with Guastaferro's current employer

7

does not, in and of itself, imply a retaliatory scheme. According to the parties' submissions, Whipple owns and operates a night club in or around Buffalo, New York; accordingly, he appears to match the description of the as yet unnamed "John Doe" defendants against whom Plaintiffs also assert their claims. (Compl. ¶¶ 12-13; Scrivani Decl. ¶ 26-28, Ex. O; Guastaferro Decl. ¶¶ 13-14.) Plaintiffs have offered no basis for the preclusion of communication between a class action defendant and another potential defendant.[3] More importantly, however, Plaintiffs do not dispute that, as of the filing of this motion, no adverse employment action has been taken against Guastaferro by her current employer,[4] nor are there any allegations that Whipple threatened such action. (Guastaferro Decl. ¶¶ 14, 19.) Indeed, Guastaferro's concerns are based on comments that she fears "Scrivani *may* make to [her] current employer." (Id. ¶ 19.) Such concerns are therefore speculative.

Finally, the Court finds defense counsel's statements regarding possible adverse tax implications to Plaintiffs in the event they succeed in their suit to be of no moment here. (Sweeney Decl. ¶ 2, Decl. of Michael Schiavone, Esq., ¶¶ 17-19, Docket No. 28-1.) These statements were made during a phone call with Plaintiffs' attorney, whose job it is to assess the validity of such statements on behalf of his clients.

Despite these conclusions, the Court finds that the record nonetheless supports limited intervention into Defendants' communications with potential opt in plaintiffs and class members. Defendants assert that the issue of adverse tax consequences to

---

[3] This does not constitute a finding that Whipple is or should be a named a defendant in the present action.

[4] In light of this undisputed fact, Defendants' submission of at least eight nearly identical news articles regarding Guasteferro's unrelated arrest is, in a word, excessive. The parties are reminded not to stray from the path of relevance.

8

Plaintiffs, should they prevail, is material to this action. (Schiavone Decl. ¶¶ 17-20, 31; Defs' Mem of Law in Opp'n at 18-19.) Further, Defendants filed their answer on the heels of Plaintiffs' reply in this motion, in which they assert seven counterclaims for, *inter alia*, conversion, fraudulent inducement to contract, and unjust enrichment. (Answer ¶¶ 47-98, Docket No. 32.) As Plaintiffs concede, there is nothing inherently retaliatory in raising counterclaims unless such claims lack a reasonable basis in fact or law. Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008) (citing Bill Johnson's Restaurants v. NLRB, 461 U.S. 731, 740, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983)); (see Pls' Mem of Law in Opp'n at 8 n. 5). Plaintiffs have not yet had a chance to challenge these counterclaims, should they choose to do so. As such, and without commenting on the potential viability of the counterclaims here, the Court notes that similar claims have survived motions to dismiss in other FLSA actions. See Ruffin v. Entertainment of the Easter Panhandle, 845 F. Supp. 2d 762, 766-70 (N.D. W. Va. 2011) Thus, potential plaintiffs must be made aware of these issues if they are to make an informed decision on whether to opt in to the FLSA or exclude themselves from the New York Labor Law class action.

      The manner in which potential plaintiffs are informed of the counterclaims and potential tax issues, however, must be free from coercion. To that end, the employment relationship between Defendants and potential plaintiffs, and particularly the potential for that relationship to be used to pressure or otherwise influence potential class members to make factual concessions or settle legal claims, cannot be ignored. The Court is precluded from any significant restraint on the parties' communications with potential class members because this record does not support a finding of actual abuse. Austen, 831 F. Supp. 2d

at 567-68; see Gulf Oil Co., 452 U.S. at 104. Austen, 831 F. Supp. 2d at 568. The following limited order is warranted, however, in order to guard against the likelihood that participation in the class action would be chilled by such abuse. Gulf Oil Co., 452 U.S. at 104.

- Defendants themselves, as opposed to their counsel, are prohibited from speaking with potential class action and opt in plaintiffs regarding the litigation, including any counterclaims or possible tax implications that might result, or using a third-party other than counsel to that end. No limitation is placed on Defendants' ability to speak with potential plaintiffs regarding other matters.

- Defense counsel is not prohibited from speaking with potential class action and opt in plaintiffs on an individual basis regarding the action, provided that counsel identify him- or herself as counsel for Defendants in this litigation. Plaintiffs' counsel, however, must be given one-week's notice and a preview copy of any written communication to be sent by defense counsel to potential class action and opt in plaintiffs addressing Defendants' counterclaims or possible adverse tax implications. This will afford Plaintiffs an opportunity to either object to any potentially, even if not intentionally, misleading or coercive language therein, or to send their own complementary communication to the potential plaintiffs.

The parties are reminded that any counsel's communications with parties represented by counsel, either by affirmatively opting in to the suit or by being a member of a certified class, are governed by the rules of professional conduct. See 22 NYCRR § 1200 (Rule 4.2); Tedesco v. Mishkin, 629 F. Supp. at 1483.

## IV. CONCLUSION

After weighing the need of potential plaintiffs to receive accurate and impartial information regarding the litigation against the possible infringement of Defendants' right of free speech, this Court finds that the above limited orders are a necessary and appropriate use of its discretion to supervise communications in class and collective

10

actions. See Hoffmann–La Roche Inc., 493 U.S. at 171; Gulf Oil Co., 452 U.S. at 99-100; Austen, 831 F. Supp. 2d at 569-70; Wright v. Adventures Rolling Cross Country, Inc., No. C-12-0982, 2012 WL 2239797, *5-6(N.D. Cal. June 15, 2012).

## V.  ORDERS

IT HEREBY IS ORDERED that Plaintiff's Motion for a Temporary Restraining Order (Docket No. 18) is GRANTED to the extent stated above, and otherwise DENIED.

SO ORDERED.

Dated:   October 5, 2012
            Buffalo, New York

                                       /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                                Chief Judge
                                       United States District Judge