UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTY BROWN, ALSO KNOWN AS
"LEAH," individually and on behalf of herself
and all others similarly situated,

                              Plaintiffs,

        v.                                              **DECISION AND ORDER**
                                                        12-CV-529S
MUSTANG SALLY'S SPIRITS AND GRILL,
INC., d/b/a/ Tiffany's Cabaret & Steakhouse
and Tiffany's Cabaret, DAVID SCRIVANI,
DOMINIC L. SCRIVANI, and JOHN DOEs 1-
10,

                              Defendants.


## I. INTRODUCTION

        In a Decision and Order entered January 31, 2013, this Court granted a Joint Motion

for Entry of a Stipulation and Consent Decree resolving Plaintiffs' claims under the Federal

Labor Standards Act ("FLSA") and New York State Labor Law.  Presently before this Court

is Plaintiffs' motion for attorneys' fees and costs associated with the resolution of this

matter.

## II. DISCUSSION

        Both FLSA and N.Y. Labor Law provide for an award of reasonable attorneys' fees

and costs to be paid by the defendant in addition to a judgment. 29 U.S.C. § 216(b); N.Y.

Labor Law § 198(1-a).  "[A] reasonable attorney's fee is one that is adequate to attract

competent counsel, but that does not produce windfalls to attorneys."  Blum v. Stenson,

465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)(ellipsis, additional brackets, and internal quotation marks omitted); see Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010)).  Both the Second Circuit and the Supreme Court have held that "the lodestar  – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" Millea v. Metro-North Railroad Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany ("Arbor Hill"), 522 F.3d 182, 183 (2d Cir. 2008)); see Perdue, 559 U.S. at 552.  The application of the lodestar method in this Circuit also requires a district court, "in exercising its considerable discretion, to bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified[1] as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill, 522 F.3d at 190 (emphasis removed); see Barfield v. N.Y.C. Health and Hosp. Corp., 537 F.3d 132, 151-52 (2d Cir. 2008). Ultimately, "the presumptively reasonable fee is what a reasonable paying client would be willing to pay, giving that a client wishes to spend the minimum necessary to litigate the case effectively." Disabled Patriots of America, Inc. v. Niagara Group Hotels, LLC, 688 F. Supp. 2d 216, 223 (W.D.N.Y. 2010) (internal quotation marks omitted); see Arbor Hill, 522 F.3d at 184.

---

[1]The most-cited variables are the so-called Johnson factors, including: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 187 n. 3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

**A.     Reasonable Hourly Rate**

Generally, the reasonable hourly rate is the hourly rate employed by attorneys in the district in which the litigation is brought.  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).  Where, as here, a request for an award of attorneys' fees is based on an out-of-district rate:

> a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result.

Simmons, 575 F.3d at 175; see Luca v. County of Nassau, 344 Fed. App'x 637, 641-42 (2d Cir. 2009) ("an examination of out-of-district rates is proper only in a narrow set of circumstances)). Further:

> In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. Lawyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results. The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result.

Simmons, 575 F.3d at 175-76 (emphasis added).  Finally, it must also be noted that fee-shifting provisions such as the one found in FLSA are "not designed as a form of economic relief to improve the financial lot of attorneys nor were they intended to replicate exactly the

fee an attorney could earn through a private fee arrangement with his [or her] client."[2] Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).

Here, Plaintiffs do not deny that the requested hourly rates, ranging from $550 for one of the named partners to $135 for each paralegal, exceed the rates generally found reasonable in this district. (Decl. of Dan Getman, Esq., Ex. 1 Fees & Costs Chart, Docket No. 67-3); see Mendez v. Radec Corporation, 907 F. Supp. 2d 353, 357 (W.D.N.Y. 2012) (average hourly rate of $200 reasonable for this district); Odom v. Hazen Transport, Inc., 275 F.R.D. 400, 413 (W.D.N.Y. 2011) ($195 hourly rate for associate and $250 hourly rate for partner in FLSA class action litigation reasonably conformed to prevailing rates in community); Grievson v. Rochester Psychiatric Center, 746 F.Supp.2d 454, 463–65 (W.D.N.Y.2010) (reasonable hourly rates in ADA discrimination case in this district range between $165 and $250 per hour depending upon attorney's level of experience); Disabled Patriots of America, Inc. v. Niagara Group Hotels, LLC, 688 F. Supp. 2d 216, 225 (W.D.N.Y. 2010) ("this Court is unaware of any decision issued ... recently [in this district] in any substantive area in which fees of more than $240 per hour were awarded"); see also Ozbakir v. Scotti, 906 F.Supp.2d 188, 199 (W.D.N.Y. 2012)(noting that, absent an exceptional case, it will likely be years before attorneys in this district command hourly rates of $475 and $600).

---

[2]In light of this, Defendants' total billing records, as opposed to the hourly rates themselves, are irrelevant to the present discussion. Although Plaintiffs argue Defendants should have disclosed this information, they offer no argument as to how they were prejudiced by Defendants' failure to do so: indeed, this discussion appears to be included for the sole purpose of an *ad hominem* attack on Defense counsel's effectiveness. (See Pls' Mem of Law at 14.) Such arguments do nothing to further resolution of the issues before the Court.

Here, Plaintiffs rely heavily on this Court's approval in <u>Salazar-Martinez v. Fowler Brothers, Inc.</u> of the same out-of-district rates requested in the instant case. No. 10-CV-6257, 2012 WL 4062582 (W.D.N.Y. Sept. 14, 2012) (Telesca, J.). (Pls' Mem of Law at 11-14, Docket No. 67-1.)  The approval of these rates in <u>Salazar-Martinez</u>, as well awards of attorneys' fees to Plaintiffs' counsel in other cases, is relevant to, but not dispositive of, the issue here.   These cases help evidence that Plaintiffs' counsel has a special expertise in FLSA cases, an objective basis on which a client might chose to pay the firm's higher rates. <u>Simmons</u>, 575 F.3d at 175-76.

Nonetheless, this Court finds <u>Salazar-Martinez</u> distinguishable.  That case involved "the representation of hundreds of foreign migrant workers who reside in rural areas of Mexico, and who do not speak English." 2012 WL 4062582 at *2.  Judge Telesca found that a client would have sought an out-of-district counsel with a high level of experience "in representing migrant farm workers, particularly foreign migrant farm workers, in complicated cases such as this." <u>Id</u>.   That experience, however, was provided by an additional law firm engaged by Plaintiffs' counsel. It was this firm that had specific and significant experience in class action cases on behalf of foreign migrant farm workers and whose named attorney spoke fluent Spanish to allow for effective communication with the class clients. <u>Id</u>. Further, the size of the class in <u>Salazar-Martinez</u>, both in terms of geography and number, is greater than the local class at issue in the instant case.

Judge Telesca did credit Plaintiffs' counsel's FLSA expertise in <u>Salazar-Martinez</u>; however, this does not equate to a finding that such rates are appropriate in every FLSA case in this district.  Indeed, shortly after issuing the decision in <u>Salazar-Martinez</u>, Judge Telesca held that hourly rates ranging from $375 for partners to $75 for contract law

5

students, which constituted an average rate of $230 per hour, were unreasonable for a

FLSA case in this district. Mendez, 907 F.Supp.2d at 357-58 (Telesca, J.). This Court finds

Mendez a more appropriate comparable to the instant case in terms of the scope of the

proposed class and the complexity[3] of the issues involved. It must therefore be noted that

the successful settlement in that case was obtained by in-district counsel, a fact which

weighs against finding appropriate the higher out-of-district rates requested here. See

Simmons, 575 F.3d at 176 (party seeking fee award must make a particularized showing

that use of in-district counsel would produce a substantially inferior result).

Finally, the fact that other courts have approved Plaintiffs' counsel's proposed rates

as reasonable in those districts does not render the rates reasonable in this district or in

the instant case. See Smith v. Nagai, No. 10 Civ. 8237, 2012 WL 2421740, *6 (S.D.N.Y.

May 15, 2012), *report and recommendation adopted by* 2012 WL 2428929 (S.D.N.Y. June

27, 2012) (finding the proposed rates "comparable to rates regularly approved *in the*

---

[3]As Defendants point out, Plaintiffs' counsel even asserts that "[c]ourts have routinely rejected nearly every . . . counterclaim" raised in the present action. (Pl's Mem of Law at 15; see Defs' Mem of Law at 20.) Further, Plaintiffs' counsel argues that "the "predicate question of whether dancers were even employees" renders this case more complex than Salazar-Martinez., (Pls' Mem of Law at 13), however, this Court disagrees. Although not yet reached in this Circuit, this discrete issue is far from without useful precedent. See e.g. Bosco v. Tampa Food & Beverage, LLC, No. 8:11-cv-1651-T-26AEP, 2013 WL 49477, *1 (M.D.Fla. Jan. 3, 2013) (noting that "[m]any federal courts have construed arrangements between nightclubs and dancers and usually found that the dancers were employees as opposed to independent contractors"); Butler v. PP & G, Inc., Civ. No. WMN-13-430, 2013 WL 4026983, *5 (D.Md. Aug. 6, 2013) (collecting case holding that exotic dancers are employees for FLSA purposes); See Reich v. Circle C. Invest., Inc., 998 F.2d 324, 328-29 (5th Cir.1993) (holding that topless dancers are employees under the FLSA); Thornton v. Crazy Horse, Inc., No. 3:06-cv-251-TMB, 2012 WL 2175753 (D. Alaska June 14, 2012) (considering dancers at an adult establishment employees); Thompson v. Linda and A. Inc., 779 F. Supp. 2d 139, 151 (D.D.C. 2011) (finding that exotic dancers were employees on summary judgment); Clincy v. Galardi South Enters., Inc., 808 F. Supp. 2d 1326, 1345 (N.D.Ga.2011) (finding that exotic dancers were employees on summary judgment); Morse v. Mer Corp., No. 1:08-cv-1389-WTL-JMS, 2010 WL 2346334, *6 (S.D.Ind.2010) (finding exotic dancers were employees on summary judgment); see also Matter of Enjoy The Show Management Inc., 287 A.D.2d 822, 823, 731 N.Y.S.2d 287, 287-88 (N.Y.A.D. 3d Dep't 2001) (evidence of sufficient direction and control over dancers supported that they were employees rather than independent contractors).

*Southern District of New York*" (emphasis added)); see generally Ayers v. SGS Control Servs., 353 Fed App'x 466, 467 (2d Cir. 2009) (rejecting argument on appeal that fee award was erroneous because "other cases had been decided differently"); Husain v. Springer, No. 97 CV 2982(NG)(CLP), 2013 WL 1122718, *7 n. 1 (E.D.N.Y. Mar. 15, 2013) (noting that the Southern District normally compensates attorneys at higher rates than surrounding districts). In any event, contrary to Plaintiffs' assertion, several of the cases cited in support of this argument do not specifically discuss the reasonableness of hourly rates, but are awards based on percentages of a common fund. (Pls' Mem of Law at 17); see Clark v. Ecolab Inc., Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2010 WL 1948198, *8 (S.D.N.Y. May 11, 2010) (no discussion of reasonable hourly rates even for cross-check purposes); Bredbenner v. Liberty Travel, Inc., Nos. 09-905(MF), 09-1248(MF), 09-4587(MF), 2011 WL 1344745, at *18-24 (D.N.J. Apr. 8, 2011)(same). Indeed, although cited by counsel as a case in which the firm's customary rates had been approved, the court in Ayers v. SGS Control Services instead *reduced* the requested award, finding that a $500 hourly rate for attorney Getman was "generous" and the "total amount of hours expended by Class Counsel and paralegals [was] excessive." Nos. 03 Civ. 9078(RMB), 06 Civ. 7111(RMB), 2008 WL 4185813, *7-8 (S.D.N.Y. Sept. 9, 2008), *aff'd in relevant part* 353 Fed. App'x 466 (2d Cir. 2009). The Court will take this opportunity to remind all attorneys who appear before it that the padding of neither the bill nor the brief will be tolerated.

This Court therefore concludes that a reasonable, paying client would not pay the hourly rates as set out by Plaintiffs, and instead a rate more consistent with this district's average is appropriate. See Arbor Hill, 522 F.3d at 191 (permitting a district court to apply

an out-of-district rate "or some rate in between the out-of-district rate sought and the rates charged by local attorneys" as appropriate); Davis v. Eastman Kodak Co., 758 F. Supp. 2d 190, 201 (W.D.N.Y. 2010)(same).

This Court finds the hourly rate categories calculated in the fairly recent case of Eastman Kodak to be a useful comparison. There, in determining the reasonableness of an award of attorneys' fees pursuant to Title VII's fee shifting provision in nationwide class action, Magistrate Judge Feldman set out the following categories for hourly rates: $450 for attorneys with 20 years or more experience; $350 for attorneys with 11-20 years experience; $300 per hour for attorneys with 6-10 years experience; and $250 for attorneys with 0-5 years experience. Eastman Kodak, 758 F. Supp. 2d at 192, 195, 201. That case, however, involved systemic race discrimination in pay and promotions claims described by Judge Feldman as "unusually complex" and having "a profound effect on not only the named plaintiffs, the class members, and Kodak officials, but also on all counsel and, candidly, the Court as well." Eastman Kodak, 758 F.Supp.2d at 193. Because the scope of the instant case is more limited than either Eastman Kodak or, as discussed above, Salazar-Martinez, both in terms of class size and complexity of issues, it would be unreasonable to award a higher rate to counsel here. Therefore the Eastman hourly rate categories will be reduced by approximately one-third to reach a rate more appropriate for the circumstances of the instant case, resulting in hourly rates of $300 for Mr. Getman, $235 for Mr. Sweeney, $200 for Mr. Dunn and Ms. Tse, and $170 for Mr. Guerra. (See Getman Decl. at 8, 12-18 (discussing the background and experience of the firm's individual attorneys.)

The exception to these rates is Diana Marin, to whom Plaintiffs attribute the greatest

number of billed hours. Marin is frequently referred to as an associate attorney without qualification, and all hours attributed to her are billed at a rate of $200 per hour. (See Getman Decl. ¶¶ 32, 39.) Ms. Marin, however, did not become a member of the bar in any jurisdiction until November 27, 2012, when she was admitted to practice in New Jersey. (Getman Decl. ¶ 69.) Nonetheless, Plaintiffs have attributed a $200 'associate attorney' rate to all her hours, even those prior to her admission. (See Fees & Costs Chart, Docket No. 67-3; Billing Records at 68-95, Docket No. 67-4.) This is inappropriate, particularly in light of the fact that almost a third of Ms. Marin's hours were pre-admission. See Kadden v. VisuaLex, LLC, 11 Civ. 4892, 2012 WL 6097656 at *2 (S.D.N.Y. Dec. 6, 2012) ("Regardless of the level of skill [s]he displays, a law clerk cannot expect to garner fees similar to those earned by a junior associate who is license[d] to practice law."); Jemine v. Dennis, 901 F.Supp.2d 365, 393 (E.D.N.Y. 2012) (reducing hourly rate for law school graduate who was not yet admitted). The pre-admission hourly rate will therefore be $100, with a post-admission rate of $150.

The Court finds the proposed paralegal rate of $135, although similar to that accepted in Eastman Kodak, to be excessive in this case. 758 F. Supp. 2d at 201. Even out-of-district paralegal rates are generally within the $75-100 range. Romeo and Juliette Laser Hair Removal, Inc. v. Assara I, No. 08 Civ. 442(TPG)(FM), 2013 WL 3322249, *5 (S.D.N.Y. July 2, 2013)($75 per hour consistent with prevailing market rate in the Southern District); American Honda Motor Co., Inc. v. V.M. Paolozzi Imports, Inc., No. 7:10-cv-955(FJS/ATB), 2013 WL 1296421, *8 (N.D.N.Y. Mar. 26, 2013) ($80 per hour reasonable paralegal rate); Firststorm Partners 2, LLC v. Vassel, No. 10-CV-2356(KAM)(RER), 2012 WL 3536979, *3-4 (E.D.N.Y. Aug. 15, 2012) (applying $75 paralegal rate after considering

$70-80 range); <u>Geist v. Hartford Life and Acc. Ins. Co.</u>, No. 07-CV-065A(Sr), 2010 WL 5392647, *3 (W.D.N.Y. Nov. 29, 2010) ($65 hourly rate for paralegal reasonable in ERISA case), *report and recommendation adopted by* 2010 WL 5387846 (W.D.N.Y. Dec. 21, 2010). The hourly rate of $75 is therefore reasonable for the listed paralegals in this case. The Court also finds this rate appropriate for the listed technology specialist. The $195 hourly rate is excessive for the listed tasks, which include the preparation of spreadsheets, legal research, and "damage calc[ulations]." (Billing Records at 112-13, Docket No. 67-4.)

Plaintiffs correctly point out that clerical time has been previously approved in this district. <u>See Matusick v. Erie County Water Authority.</u>, 774 F. Supp. 2d 514, 531 (W.D.N.Y. 2011). In <u>Matusick</u>, a $20 per hour clerical rate was found reasonable. 774 F. Supp. 2d at 531. Consistent with the adjustment of rates between this district's average rates and the heightened out-of-district rates requested, <u>see Knoeffler v. Town of Mamakating,</u> 126 F. Supp. 2d 305, 317 (S.D.N.Y. 2000) ($50 per hour for clerical tasks reasonable), the reasonable rate for clerical time in the instant case will be set at $30 per hour.

**B.    Reasonable Hours**

Initially, Plaintiffs concede that, or at least consent to, a 10% across-the-board reduction in fees "to address any potential duplicative or excessive billing." (Getman Decl. ¶21); <u>see In re Agent Orange Product Liability Litigation,</u> 818 F.2d 226, 237–38 (2d Cir. 1987) (across-the-board percentage reduction practical means of "trimming fat from a fee application"). A review of the billing records reveals an assortment of hours billed as non-clerical that nonetheless involve administrative tasks such as ECF filing, preparation of documents for filing, formatting of tables of contents and authorities, and compilation of

costs. <u>Knoeffler</u> 126 F. Supp. 2d at 317 ("faxing, filing, photocopying, delivery, drafting affidavits of service, and service of papers" are considered clerical tasks); <u>see</u> <u>General Elec. Capital Corp. v. G. Howard Assocs., Inc.</u>, No. 09-cv-3923 (RRM)(JMA), 2010 WL 2346296, *7 n. 17 (E.D.N.Y. May 18, 2010) (same), *report and recommendation adopted by* 2010 WL 2348640 (E.D.N.Y. Jun 09, 2010). Further, the records indicate billing for numerous internal discussions. Such discussions are a necessary part of any representation, and "billing records are not necessarily repetitive just because [two staff members] worked on a particular event." <u>Matusick</u>, 774 F.Supp.2d at 531. Nonetheless, "internal conferences are harder to verify and therefore more likely to be excessive." <u>Pascuiti v. New York Yankees</u>, 108 F. Supp. 2d 258, 271 (S.D.N.Y. 2000) (citing <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 161 F.R.D. 258, 268 (S.D.N.Y. 1995)). Further, several of these conferences involved the higher paid attorneys discussing the above referenced administrative tasks, such as formatting tables of contents or compiling costs. This Court therefore finds that the across-the-board reduction should be increased to 20%.

**C. Costs**

Defendants do not object to Plaintiffs' requested costs, and the Court concludes that they are reasonable for the present case.

**D. Award**

In light of the above discussion, the Court concludes the following represents a reasonable award of attorneys' fees in the present case.

| Name | Code[4] | Claimed Hours[5] | Hourly Rate | Total |
|---|---|---|---|---|
| Dan Getman | P | 150.5 | $ 300.00 | $45,150.00 |
| Michael Sweeney | P | 18.8 | $ 235.00 | $4,418.00 |
| Matt Dunn | A | 0.2 | $ 200.00 | $40.00 |
| Artemio Guerra | A | 94.9 | $ 170.00 | $16,133.00 |
| Lesley Tse | A | .4 | $ 200.00 | $80.00 |
| Diana Marin (associate) | A | 125 | $ 150.00 | $18,750.00 |
| Diana Marin (law clerk) | LC | 40.9 | $ 100.00 | $4,090.00 |
| Mike Russo | TS | 8.4 | $ 75.00 | $630.00 |
| Janice Pickering | PL | 27.5 | $ 75.00 | $2,062.50 |
| Carolyn Mow | PL | 14.5 | $ 75.00 | $1,087.50 |
| Tara Tayyabkhan | PL | 8.9 | $ 75.00 | $667.50 |
| Kathy Weiss | PL | 1.4 | $ 75.00 | $105.00 |
| Monica Ayres | PL | 6 | $ 75.00 | $450.00 |
| Anibal R. Garcia | PL | 12 | $ 75.00 | $900.00 |
| Clerical | CL | 17.9 | $ 30.00 | $537.00 |
| Totals | | 527.30 | | $95,100.50 |
| 20% Reduction | | | | $19,020.10 |
| Total Legal Fees | | | | $76,080.40 |
| Approved Expenses | | | | $2,737.23 |
| Total Award | | | | $78,817.63 |

---

[4]As used by Plaintiffs: P = Partner; A = Associate; PL = Paralegal; TS = Tech Specialist Paralegal; and CL = Clerical.

[5]Includes hours claimed for preparation of reply memorandum on the present motion. (Fees & Costs Chart, Docket No. 75-1.); see generally Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999).

**E.      Unnecessary Litigation Efforts**

Defendants argue that a further overall reduction in fees is warranted because Plaintiffs prolonged litigation in the face of a settlement proposal. (Defs' Mem of Law in Opp'n at 22-24, Docket No. 72.) The cases on which Defendants rely, however, involve circumstances not present here.  For example, in <u>Falleson v. Paul T. Freund Corp.</u>, the plaintiffs rejected a $10,000 offer of judgment and litigated for five years before ultimately settling for that same amount.  736 F. Supp. 2d 673, 675 (W.D.N.Y. 2010); <u>see also</u> <u>Mendez</u>, 907 F.Supp.2d at 358 (settlement delayed by the plaintiffs for seven years). Further, the amount requested in <u>Falleson</u> exceeded the cap set in the parties' settlement agreement. <u>Id</u>. at 674.  Thus, although this Court finds Plaintiffs' fee request excessive, only the reductions discussed above are warranted.

## III. CONCLUSION

For the reasons stated above, Plaintiffs' motion for attorneys' fees and costs is granted in the amount of $78,817.63.

## IV.  ORDERS

IT HEREBY IS ORDERED that Plaintiffs' motion for attorneys's fees and costs (Docket No. 67) is GRANTED as stated above.

SO ORDERED.

Dated: September 12, 2013
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court